IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH KING, | ) | CASE NO. 1:13CV0778 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL, | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Deborah King ("Plaintiff" or "King") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for supplemental social security income ("SSI") and disability insurance benefits ("DIB").  Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned Magistrate Judge pursuant to the consent of the parties.  Doc. 13.

For the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I.  Procedural History

King filed her application for SSI and DIB on February 27, 2008, alleging a disability onset date of February 17, 2008.  Tr. 96-103, 122.  She alleged disability based on fibromyalgia. Tr. 122.  After denials by the state agency initially and on reconsideration (Tr. 79-81, 84-86), King requested a hearing.  Tr. 87-88.   A hearing was held before Administrative Law Judge Traci M. Hixon ("ALJ") on June 24, 2010.  Tr. 40-76.

In her May 26, 2011, decision, the ALJ determined that King's residual functional capacity ("RFC") did not prevent her from performing work existing in significant numbers in the national economy, i.e., she was not disabled.  Tr. 18-38.  King requested review of the ALJ's decision by the Appeals Council. Tr. 19.  On February 14, 2013, the Appeals Council denied King's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-8.

## II. Evidence

### A.  Personal and Vocational Evidence

King was born in 1960 and was 47 years old on her alleged onset date.  Tr. 33.  King has a 10th grade education.  Tr. 127.   Her past relevant work experience includes work as a hospital cleaner, preparation cook, home companion, and laundry worker.  Tr. 68-69.

### B.  Medical Evidence related to Plaintiff's Physical Impairments

Since 2003, King has been prescribed two hearing aids to assist her with her hearing difficulties.  Tr. 232, 296-98.

Emergency Room – Southwest General.  In December 2007, King presented to the Emergency Room of Southwest General Health Center with complaints of dull aching arm pain.  Tr. 178.  King was diagnosed with fibromyalgia and advised to stop taking the prescription medication Soma.  Tr. 180, 196.

Neighborhood Family Practice.  On June 10, 2008, King began treatment at Neighborhood Family Practice.  Tr. 222-223.  King complained of all over pain for the last five years. Tr. 233.   It was noted that King's pain was probably due to fibromyalgia.  Tr. 222.  It was

also noted that King had diabetes which was well-controlled.  By December 2008, it was reported that King's pain was in better control with medication.  Tr. 352.

On November 18, 2010, Nurse Practitioner Amy Ebbit performed an examination and assessed that King had a recent flare up with her fibromyalgia.  Tr. 383.  Ms. Ebbit increased the dosage of King's medication to treat fibromyalgia.  Id.

Consultative Exam - Dr. Saghafi.  On August 12, 2008, Dr. Dariush Saghafi, M.D., performed a physical consultative examination of King.  Tr. 260-62.  Dr. Saghafi noted King's diagnosis of fibromyalgia and her complaints of pain in her arms, legs, hips, neck, and shoulders.  Tr. 260.  King stated that she stopped working in 2008 due to her pain.  Dr. Saghafi assessed that there was no medically oriented deficit found on exam and opined that Plaintiff was able to lift, push, pull, bend, walk, and stand normally.  Tr. 262.  Dr. Saghafi also noted that the examination revealed no evidence of ataxia or an antalgic gait and that King walked with a good stride without the presence of shuffling, turning difficulties, or predisposition to falls.  Tr. 262.

State Agency Review.  On August 29, 2008, state agency physician Diane Manos, M.D., reviewed the evidence of record.  Tr. 272.   Dr. Manos affirmed Dr. Saghafi's assessment and noted that King's physical impairments are not severe.  Id.  Dr. Manos opined that King's allegations are only partially credible.  Id.

**C.  Medical Evidence related to Plaintiff's Psychological Impairments**

Alternative Paths/Dr. Alcorn.  On July 1, 2008, King initially presented to Alternative Paths for medication to relieve her anxiety symptoms.  Tr. 278.  King reported that she has had problems with anxiety for more than 25 years but only recently acknowledged it as a problem that needs to be addressed.  Id.   King reported that a primary care doctor previously treated her

with Paxil and Prozac but both led to deleterious side effects and she stopped using them.  Tr. 287.

On July 15, 2008, King treated with Dr. Robert Alcorn, M.D. Tr. 242.  King reported that she stopped working in February 2008 because she could not handle the stress.  Tr. 276.  Dr. Alcorn prescribed Citalopram for King's anxiety.  Id.  That same day, Dr. Alcorn filled out a Mental Status Questionnaire opinion stating that King "cannot work at all due to extreme fearfulness and frequent panic attacks."  Tr. 240.  Dr. Alcorn also opined that King's abilities for social interaction and adaptation were impaired and that she had a poor ability to maintain attention, sustain concentration, persist at tasks, and complete tasks in a timely fashion.  Id.

On August 12, 2008, King reported that the medication had a profound effect on her anxiety level, but wore off in the afternoon.  Tr. 268.  King also reported that her fears had lessened and she was no longer terrified of falling down a hill.  Id.  On September 9, 2008, Dr. Alcorn reported that King's anxiety was well controlled but stated that "she is complaining of depression most of the summer."  Tr. 275.   On October 14, 2008, Dr. Alcorn reported that King's anxiety remains well controlled and her depression is much better.  Tr. 274.

On January 6, 2009, King returned to Dr. Alcorn stating that her medications aren't working as well.  Tr. 327. King stated that she might be forgetting to take her second dose of Citalopram in the afternoon.  Id.  On March 18, 2009, King reported that her anxiety had increased after her Citalopram dose was lowered.  Tr. 328.  On April 15, 2009, King stated that she felt a lot more secure while walking and her fears were greatly reduced.  Tr. 329.  In June 2009, King reported that she was on Zoloft and Amitryptyline and was doing well.  Tr. 332.  She stated that she was getting out more and could go to the park and look at fish in the lake without fear of falling in.  Id.  By September 2009, Dr. Alcorn reported no significant changes from

King's last visit and stated that King's mood is good.  Tr. 333.   Again in December 2009, there were no significant changes in King's mental health status, although she reported drowsiness from her fibromyalgia medication (Lyrica).  Tr. 334.

On March 2, 2010, King stated that she felt ok, "nothing I can't handle."  Tr. 335.  On May 26, 2010, Dr. Alcorn drafted a letter stating that King is unable to work due to a "high degree of anxiety which has resulted in a constriction of her ability to get around and her ability to make decisions."  Tr. 337.  Dr. Alcorn also stated that he has been treating King for chronic anxiety since July 2008 and "[a]fter some initial improvement with medication she has been reporting that periodically she becomes more anxious and depressed…It appears to me that her condition is gradually getting worse and harder to treat.  As we adjust her medications, she has more and more side effects, such as dizziness, which increases her fear of falling."  Id.

On June 23, 2010, Dr. Rajeev Mehta wrote a letter stating that he had recently taken over King's care from Dr. Alcorn.  Tr. 360.  Dr. Mehta stated that he suspected that King has posttraumatic stress disorder but, at that time, could not comment as to how her phobias would render her unable to work altogether.  Id.

Catholic Charities.   King treated with Catholic Charities from February 2009 through April 2009.  Tr. 301.  On February 5, 2009, a Diagnostic Assessment was completed for King, in which King complained of high anxiety, panic attacks, low self-esteem, overwhelming fears (heights and falling), and depression.  Tr. 302.   On March 17 and 24, 2009, King reported that her anxiety had increased but noted that she was making progress.  Tr. 319-320.   On March 31, 2009, King stated that Zoloft is working better and she had less fears.  Tr. 322.   On April 15, 2009, King reported she had less anxiety and depression.  Tr. 323.

     <u>Consultative Exam - Dr. Pickholtz.</u>  On June 26, 2008, Dr. Herschel Pickholtz Ed.D., performed a psychological consultative examination of King.  Tr. 231-237.  King reported that she experienced difficulties with anxiety since her 20s and was most afraid of heights and driving on the highways.  Tr. 231, 234.  At the time of the examination, King was not receiving any psychiatric treatment and stated she was not sure if she had ever received any psychiatric treatment in the past.  Tr. 232.  When asked why she had not sought any psychiatric help, "she just shrugged her shoulders and stated she didn't have time for it."  Id.  King stated that she stopped working in February 2008 due to her fibromyalgia.  Id.  Dr. Pickholtz stated that King had "a little tendency to exaggerate and not to respond as much as she could and [he] had to prod and push her on several occasions to respond."  Tr. 233.  Dr. Pickholtz found King's affect to be a bit constricted and her mood a bit depressed.  Id.  With regard to daily activities, King reported that she usually goes to sleep between 9 and 10 p.m. and gets up at 7 a.m.  Id.  King stated that she watches the news; goes to appointments, as needed; shops; goes to the library; reads; does chores; cooks; walks daily; and plays with her dog.  Tr. 235.  King reported that on Saturdays she may visit with people and go out to eat.  Id.  She stated that on Sundays she goes to church from 9 a.m. until around 1 p.m. and then goes home and rests and later returns to church for a second session.  Id.

     Dr. Pickholtz opined that, despite problems with anxiety since her 20s, the impact of King's anxiety on her work functioning is mild and noted that King circumvented those difficulties when she was working.  Tr. 236.  Dr. Pickholtz stated that King would benefit from intervention to deal with her phobias but believed with medication and support she would be able to work.  Id.  He further stated that King's anxiety is not interfering with her shopping, doing chores, or going to church, as long as she does not have to go on highways.  Id.

State Agency Review.  On August 6, 2008, John Waddell, Ph.D., state agency psychological consultant, reviewed the evidence of record and opined that King has mild limitations in her activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace.  Tr. 256.  Dr. Waddell opined that King's allegations are partially credible and that her psychological impairments are not severe.  Tr. 258.

**D.  Testimonial Evidence**

**1.    King's Testimony**

At the administrative hearing, King was represented by counsel and testified that she has a lot of pain, mostly in her bilateral arms and legs.  Tr. 55.  King also testified that she has fears of heights, elevators, falling, and is sometimes afraid of people.  Id.  King stated that she could lift a gallon of milk but her arm would drop; she could sit for two hours; cannot kneel; and would have problems walking because she is unstable and doesn't like to walk.  Tr. 58, 60.  As for daily activities, King testified that she takes care of her dogs, goes grocery shopping at times, watches television, reads, and goes to church as long as she feels good.  Tr. 47-48.  King also stated that she does not like to leave the house, avoids crowds, and sometimes forgets to take care of her personal hygiene.  Tr. 47-49.

**2.    Vocational Expert's Testimony**

 Vocational Expert Barbara E. Burk ("VE"), testified at the hearing.  Tr. 68-73.  The VE testified that King's past relevant work in nursing homes would be classified as a hospital cleaner and was unskilled and performed at a light to medium exertional level.  Tr. 68.  King's work as a preparation cook was also unskilled and was performed at a heavy level.  Id.  Her work as a home companion was semi-skilled and performed at a light level.  Id.  Finally, King's prior employment as a laundry worker was unskilled and performed at a medium level.  Tr. 69.

7

The ALJ then asked the VE whether there were any jobs in the national or regional economy for a hypothetical individual of King's age, education, and employment background who is able to lift and carry 20 pounds occasionally and 10 pounds frequently; is able to stand, walk, or sit for six hours of an eight-hour work day; can occasionally climb stairs and ramps, stoop, bend and balance; cannot kneel or crawl; can reach in all directions; can handle, finger, and feel; who avoids exposure to extreme cold and dampness and hazardous conditions, particularly heights; cannot drive; who can perform simple, routine tasks with simple short instructions and simple work related decisions with few work place changes; and who has minimal contact with the public but could interact with coworkers and supervisors.  Tr. 69-70. The VE testified that such a hypothetical individual could not perform King's past relevant work but that such an individual could perform the following work:  production worker (85,000 jobs nationally; 900 regionally); and production worker's helper (85,000 jobs nationally, 1,500 jobs regionally).  Tr. 70-72.

The ALJ then asked the VE to add to the first hypothetical that the individual would need to avoid loud environments and was unable to use the telephone.  Tr. 72.  The VE stated that the second hypothetical individual could also perform work as a production worker or production worker's helper.  Id.

The ALJ then added an additional limitation to the second hypothetical stating that the individual would be "missing work frequently such that at least three times per month they're going to be absent."  Tr. 73.  The VE responded that there would be no work for such an individual.  Id.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

 In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[1] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

In her May 26, 2011, decision, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.  Tr. 28

2.  The claimant has not engaged in substantial gainful activity since February 17, 2008, the alleged onset date.  Tr. 28.

3.  The claimant has the following severe impairments:  bilateral hearing loss, fibromyalgia, and anxiety.  Tr. 28.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[2]  Tr. 28.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can only occasionally climb stairs or ramps, balance, or stoop.  The claimant cannot kneel or crawl and must avoid extreme cold or dampness.  She must also avoid heights and the operation of motor vehicles.  She can perform simple, routine tasks with simple instructions; make simple work-related decisions; and face few workplace changes.  In addition, she

---

[1] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq, corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

[2] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

should have minimal contact with the public, but she can interact with co-workers and supervisors.  She should also avoid loud environments and never use the telephone.  Tr. 30.

6.    The claimant is unable to perform any past relevant work.  Tr. 33.

7.    The claimant was born [in 1960] and was 47 years old, which is defined as a younger individual, age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age.  Tr. 33.

8.    The claimant has a limited education and is able to communicate in English.  Tr. 33.

9.    Transferability of job skills is not an issue because claimant's past relevant work is unskilled.  Tr. 33.

10.    Considering claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  Tr. 33.

11.    The claimant has not been under a disability, as defined in the Social Security Act, since February 17, 2008, through the date of this decision.  Tr. 34.

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council denied King's request for review of the ALJ decision on February 14, 2013.  Tr. 1.

## V. Parties' Arguments

### A.    Plaintiff's Arguments

Plaintiff argues that the ALJ erred in assigning little or no weight to the opinions of King's treating physician, Dr. Alcorn.  Doc. 15, p.11.  Plaintiff also contends that new and material evidence warrants a remand.  Id. at. 14. Finally, Plaintiff argues that the ALJ erred in determining her RFC at Step Four of the sequential evaluation process.  Id.

**B.      Defendant's Arguments**

In response, the Commissioner argues that substantial evidence supports the ALJ's decision that King was not disabled under the Social Security Act.  Doc. 17, pp. 1-2.

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted)).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.  The ALJ gave appropriate weight to the opinions of Dr. Alcorn**

King argues that the ALJ inappropriately gave "little weight" or "no weight" to two opinions by her treating physician, Dr. Robert Alcorn.  Doc. 15, p. 12.  Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).  If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment

relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *Id.* § 404.1527(c)(2)-(6). The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013), reh'g denied (May 2, 2013).

The ALJ did not give controlling weight to Dr. Alcorn's 2008 opinion but the ALJ was not required to assess Dr. Alcorn's opinion for controlling weight because, at the time Dr. Alcorn rendered his July 15, 2008, opinion, Dr. Alcorn was not a treating physician. A treating physician is "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you with medical treatment or evaluation and *who has, or has had, an ongoing treatment relationship with you.*" 20 C.F.R. § 404.1502 (emphasis added); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the

claimant's medical records." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (citing *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994)).  The ALJ correctly notes that Dr. Alcorn's 2008 opinion was generated after only one prior meeting with King.  Tr. 32.  Thus, Dr. Alcorn was not in a position "to provide a detailed, longitudinal picture of [King's] medical impairment(s)." *Id.* § 404.1527(d)(2). As Dr. Alcorn was not a treating physician at the time his 2008 opinion was rendered, the ALJ was not required to give that opinion controlling weight.

The ALJ assigned "no weight" to Dr. Alcorn's 2008 opinion but provided "good reasons" for doing so.  The ALJ based his assessment of Dr. Alcorn's opinion on the short length of treatment and the inconsistency of Dr. Alcorn's opinion with the record as a whole.  Tr. 32.  Specifically, the ALJ pointed out that later records seem to contradict Dr. Alcorn's opinion.  Id. Those later records are discussed in more detail below in relation to Dr. Alcorn's second opinion.

At the time of Dr. Alcorn's second opinion, on May 26, 2010, Dr. Alcorn had obtained treating physician status because he had seen King periodically over the last two years for psychiatric treatment.  The second opinion from Dr. Alcorn was a letter stating as follows:

> Mrs. King has been my patient since July, 2008.  She is suffering from a chronic anxiety disorder, which manifests primarily as phobias, i.e., specific fears.  She is fearful of driving, of going out of the home, of falling, of open windows.  After some initial improvement with medication, she has been reporting periodically she becomes more anxious and depresses.  She was found to have fibromyalgia within the past year.  It appears to me that her condition is gradually getting worse and harder to treat.  As we adjust her medications, she has more and more side effects, such as dizziness, which increases her fear of falling.
>
> It appears to me at this point, with reasonable medical certainty, that she is unable to work because of the high degree of anxiety which has resulted in a constriction of her ability to get around and her ability to make decisions.

Tr. 337.  The ALJ afforded this opinion "little weight" but provided "good reasons" for discounting the opinion.  The ALJ stated that the 2010 opinion is "not representative of the

record as a whole" and that "Dr. Alcorn's conclusions regarding the claimant's ability to work is a determination that is reserved for the Commissioner."  Tr. 32.

With regard to the determination of disability, the ALJ is correct to discount Dr. Alcorn's conclusion that King is unable to work due to her anxiety.  The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler,* 742 F.2d 968, 973 (6th Cir.1984); *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 855 (6th Cir.1986); *Garner v. Heckler,* 745 F.2d 383, 391 (6th Cir.1984). According to 20 C.F.R. § 416.927(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id.*  It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan,* 801 F.2d at 855; *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir.1985); *Watkins v. Schweiker,* 667 F.2d 954, 958 n. 1 (11th Cir.1982).

The ALJ found Dr. Alcorn's opinion inconsistent with the record as a whole. Tr. 32.  The ALJ's finding is supported by substantial evidence consisting of  treatment notes from Dr. Alcorn and Catholic Charities demonstrating improvement in King's condition; the opinions of Dr. Pickholtz and Dr. Waddell that, despite King's phobias, she is only mildly impaired in her work related functioning; and King's activities of daily living which are only mildly restricted by her anxiety.

Treatment notes.   The ALJ found Dr. Alcorn's treatment notes inconsistent with his May 2010 letter.  Tr. 32.  Although Dr. Alcorn's letter stated that King's condition was gradually

15

worsening, Dr. Alcorn's treatment notes do not support that statement.  In 2008, King mostly reported that her anxiety and fears were decreasing.  Tr. 268, 274-75.  Although on September 9, 2008, King complained of depression "most of the summer," by October 2008, she reported that her anxiety remained well-controlled and her depression was much better.  Tr. 274-75.  In January 2009 King stated that her medications were not working as well but admitted that she might have been forgetting to take her second dose in the afternoon.  Tr. 327.  From April through December 2009, King reported a decrease in her anxiety, and stated that she felt more secure and less fearful.  Tr. 329, 332-34.   In fact, in April 2009, she stated her fears were "greatly reduced" and that she felt a lot more secure while walking.  Tr. 329.    In June 2009, King stated that she was getting out more and could even look at fish in the lake without fear of falling in.  Tr. 332.  By March 2, 2010, King stated that she felt ok, "nothing I can't handle."  Tr. 335.  Accordingly, Dr. Alcorn's May 26, 2010, letter, which suggested King's condition was worsening, is not consistent with his treatment notes which show an improvement in King's condition.

King also treated with Catholic Charities in 2009 and those treatment notes further support improvement in King's anxiety during that time.  Tr. 322-23.

Dr. Pickholtz & Dr. Waddell.   The ALJ found Dr. Pickholtz's opinion consistent with the record as a whole and, accordingly, afforded that opinion the most weight.  Dr. Pickholtz's opined that King is only mildly impaired in her ability to understand and follow instructions; maintain attention and perform simple repetitive tasks relative to pace, consistency, and reliability; relate to others including fellow workers and supervisors; and withstand the stress and pressures of day-to-day work.  Tr. 33.  Dr. Pickholtz also noted that King's phobias did not prevent her from being able to perform low-skilled/unskilled labor in the past.  Tr. 33.  The

16

opinions of state agency psychologists are entitled to consideration under the same regulations used to assess other medical opinions, and may in some circumstances be entitled to greater weight than the opinions of treating or examining sources.  20 C.F.R. § 416.927(e); SSR 96-6p; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 651 (6th Cir. 2006) (en banc) (affirming ALJ's decision adopting reviewing physician's opinion over treating physician's opinion).

In addition to Dr. Pickholtz, state agency reviewing physician Dr. Waddell also found that King's psychological impairments were not severe.  Tr. 258.

Daily Activities.  Finally, in addition to the opinion evidence and treatment notes the ALJ found that King's activities of daily living are only mildly limited by her anxiety. Tr. 29.   King lives with her husband, prepares simple dishes, does laundry, uses the vacuum, feeds her dogs, goes to the grocery store, reads a newspaper and the Bible, watches television, and occasionally goes to the library.  Tr. 29-30.  With regard to social interaction, although King stated that she prefers to avoid large gatherings, she does see her grandchildren, goes to church and bible study, and she and her husband visit with others.  Id.

In sum, the ALJ properly explained her assertion that Dr. Alcorn's opinion was inconsistent with the record as a whole.   Based on all of the above, while the ALJ gave little or no weight to Dr. Alcorn's opinions, the ALJ provided "good reasons" for doing so which are supported by substantial evidence in the record and are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).   "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir.2001) (citation omitted). "This is so because there is a 'zone of choice' within which the

Commissioner can act, without the fear of court interference." *Id.* at 773 (citations omitted).

Judicial review is limited to "whether there is substantial evidence in the record to support the

administrative law judge's findings of fact and whether the correct legal standards were applied."

*Elam ex rel. Golay v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir.2003); *Castello v.Comm'r

of Soc. Sec.*, 5:09 CV 2569, 2011 WL 610590 (N.D. Ohio Jan. 10, 2011) *report and

recommendation adopted sub nom. Castello ex rel. Castello v. Comm'r of Soc. Sec.*, 5:09 CV

2569, 2011 WL 610138 (N.D. Ohio Feb. 10, 2011).  Accordingly, the ALJ did not err by giving

less weight to the opinions of Dr. Alcorn.

### B.  King's request for a sentence six remand is not warranted

King has requested that this Court remand her case to the Commissioner for

consideration of new and material evidence which she submitted to the Appeals Council.  Doc.

15, pp. 17-19.  Defendant argues that the evidence submitted is not new or material and that the

evidence post-dating the ALJ's opinion does not relate to the relevant time period.   Doc. 17, pp.

18-20.

When an ALJ renders the final decision of the Secretary, additional evidence submitted to

the Appeals Council before or after the Appeals Council denies review should be considered

only for the purposes of a Sentence Six remand.  *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.

1993).  Under *Sentence Six of 42 U.S.C. § 405(g),* "[t]he court may ... at any time order

additional evidence to be taken before the Commissioner of Social Security, but only upon a

showing that there is new evidence which is material and that there is good cause for the failure

to incorporate such evidence into the record in a prior proceeding."  Therefore, to warrant a

Sentence Six remand, the party seeking remand must show: (1) "that the evidence at issue is both

'new' and 'material,' " and (2) "that there is 'good cause for the failure to incorporate such

evidence into the record in a prior proceeding.' " 42 U.S.C. § 405(g); *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 483 (6th Cir.2006) *(quoting Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 174 (6th Cir.1994)); *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010) (although the material that the claimant sought to introduce was "new," the claimant failed to meet her burden of showing "good cause" for failure to submit materials and that the evidence was "material.").

A claimant will meet her burden of showing that such evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir.2001) (citing *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990)). A claimant must also show that such evidence is "material" by demonstrating "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster,* 279 F.3d at 357 (citing *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir.1988)). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Foster,* 279 F.3d at 357 (citing *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (1984)).

### 1.  Medical Records predating the ALJ's May 26, 2011, decision

King argues that remand is appropriate for consideration of various medical records which pre-date the ALJ's decision.  These records include treatment notes from Alternative Paths, Inc. dated July 15, 2010 through May 6, 2011 (Tr. 365-374); Neighborhood Family Practice dated September 3, 2010, through March 4, 2011 (Tr. 378-387); Catholic Charities dated April 28, 2009, through April 28, 2010 (Tr. 389-405); and the Cleveland Clinic Foundation dated March 17, 2011, through May 24, 2011 (Tr. 406-429).

This evidence is not new because King has not shown that it was "not in existence or available" to her prior to the time the ALJ made her decision.  In fact, it is clear these records were in existence prior to the ALJ's decision.

Additionally, King has not provided any "good cause" for her failure to incorporate this evidence into the record prior to the ALJ's decision.  There was nothing to suggest to the ALJ that there were missing records at the time of the decision.  The burden of providing a complete record rests on the claimant. *Foster*, 279 F.3d at 357 (6th Cir. 2001) (*citing Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 214 (6th Cir.19*86*)).  Because this Court concludes that King has failed to satisfy the requirement that the evidence is "new" and that there was "good cause" for failure to incorporate the evidence, we need not decide the question of whether the pre-decision evidence is material.

### 2.  Medical Records post-dating the ALJ's May 26, 2011, decision

Plaintiff presented two medical records to the Appeals Council which involved appointments and exams that took place *after* the ALJ's May 26, 2011, decision.  First, Plaintiff provided a June 1, 2011, treatment note which contains results of an MRI scan.  Tr. 430-431. Second, Plaintiff provided a June 17, 2011, psychiatric treatment note from Alternative Paths. Tr. 363-364.

King's only explanation for her failure to provide the evidence prior to the ALJ's decision is that "the late production of evidence is apparent, since the records were not in existence at the time of the hearing and the decision."  Doc. 15, p. 18.   Although this explanation may satisfy the requirement that the records are "new" because they were not in existence at the time of the administrative proceeding, King's explanation fails to satisfy the "good cause" requirement.  "The mere fact that evidence was not in existence at the time of the ALJ's decision

does not necessarily satisfy the 'good cause' requirement." *Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir.2012). The Sixth Circuit "takes a harder line on the good cause test with respect to timing and thus requires that the claimant 'give a valid reason for his failure to obtain evidence prior to the hearing." *Id., quoting Oliver v. Secretary of Health & Human Services,* 804 F.2d 964, 966 (6th Cir.1986) (internal quotations omitted).  To show good cause a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon, 499 F.3d 506, 513* (6th Cir.2007).

King fails to explain why the MRI could not have occurred prior to the hearing with the ALJ.  "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal citations omitted); *Meridia Prods. Liab. Litig. v. Abbott Labs*., 447 F.3d 861, 868 (6th Cir. 2006); *see also Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 n. 5 (7th Cir. 1992) (applying waiver rule because judges need not devote time to "discussion of argument, raised if at all, 'in a very opaque manner.'").  Absent a demonstration of good cause to excuse the failure to incorporate this evidence in the original hearing, we cannot order a remand for the purposes of requiring the Secretary to consider new evidence. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984).  To do so would directly contravene the express language contained in the 1980 amendment to 42 U.S.C. § 405(g). *Id.*

Because we conclude that King has failed to satisfy the "good cause" requirement, we do not decide the question of whether the post-hearing evidence is "material."[3]

---

[3] However, it appears that the evidence is not material.  The fact that the MRI does not relate to the relevant time period before the denial of benefits means that the MRI is not material.  *See Sizemore v. Sec 'y of Health & Human*

### C.  The ALJ did not err in formulating the RFC

King argues that the ALJ erred in determining her RFC.  Doc. 15, pp. 14-17.

Specifically, King contends that the ALJ erred in finding her capable of light work.  Id.   King

argues that she should be limited to sedentary work or have additional non-exertional limitations

added to the RFC for unsteady gait and difficulty balancing.  Id. at 15-17.   However, King's

argument fails because King did not present evidence to the ALJ to support limitations beyond

those assessed in the RFC.

King summarily claims that "[t]here is no doubt that [King] has an unsteady gait and

difficulty balancing" but cites to no evidence in support of this claim other than the July 2011

MRI which revealed cerebellar and brainstem atrophy.[4]  Id. at 16; Tr. 430.  As stated in the prior

section, the July 2011 MRI was not before the ALJ and King has failed to present good cause to

have it considered.  The relevant time period for King's application for benefits was through the

date of the ALJ's decision, May 26, 2011.  20 C.F.R. § 404.620 (If there is an administrative law

judge hearing decision, your application will remain in effect until the administrative law judge

---

*Servs.,* 865 F.2d 709, 712 (6th Cir.1988); *Welton v. Comm'r of Soc. Sec. Admin.*, 5:11CV104, 2012 WL 43052 (N.D. Ohio Jan. 9, 2012).  In addition, the single treatment note stating that King was anxious and worried because of her physical health issues is not material because it does not demonstrate "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Foster*, 279 F.3d at 357.

[4] King makes one citation to transcript page 38; however, Tr. 38 is part of an exhibit list which references 14 different sets of medical records (including records related to her hearing and other physical disabilities) and it is not clear to which medical record or records King might be referring.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal citations omitted); *Meridia Prods. Liab. Litig. v. Abbott Labs*., 447 F.3d 861, 868 (6th Cir. 2006); *see also Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 n. 5 (7th Cir. 1992) (applying waiver rule because judges need not devote time to "discussion of argument, raised if at all, 'in a very opaque manner.'").

hearing decision is issued.)  Thus, the ALJ did not err in formulating her RFC by failing to consider evidence not before her.[5]

      With regard to the evidence that was before the ALJ at the time of her decision, the medical evidence did not show a problem with King's gait or difficulty balancing and no physician assessed a specific limitation with regard to this issue.  To the contrary, there was medical evidence before the ALJ that King had no problems with her gait.  Tr. 262.  Dr. Saghafi stated that there was no evidence of ataxia or antalgic gait.  Id.  Dr. Saghafi also noted that King had a good stride without the presence of shuffling, festination,[6] turning difficulties, or predisposition to falls.  Id.  Dr. Saghafi opined that King is able to bend, walk, and stand.  Id.  In November 2010, King's Nurse Practitioner, Ms. Ebbitt, stated that King's coordination was normal.  Tr. 383.

      The only evidence before the ALJ in support of King's claims was her hearing testimony where she stated that she walks some but is unstable and doesn't like to walk.  Tr. 58.  The ALJ appears to have credited King's testimony to some extent because the ALJ accounted for an occasional postural limitation for balancing in the RFC.  Tr. 30.  Accordingly, the ALJ's RFC decision not to include any additional limitations for problems with gait or balancing was supported by substantial evidence in the record.

---

[5] In addition to the MRI, other evidence not presented to the ALJ (which pre-dated the ALJ's decision) includes a March 7, 2011, visit to Anne Kaesgen, M.D., where King complained of losing her balance frequently (Tr. 414) and a May 24, 2011, visit to Atanase R. Craciun, M.D. where King complained of difficulty in ambulation and gait disturbance.  Tr. 406.  Dr. Craciun stated on that date that King's gait is clearly ataxic and she is unable to narrow completely.  Tr. 407.  Dr. Craciun suspected cerebellar degeneration and stated that such a diagnosis has "implications related to balancing."  Tr. 408.  Both of these visits took place prior to the ALJ's May 26, 2011, decision and were not submitted to the ALJ.  As discussed in the previous section, King failed to meet the "good cause" standard to remand the case back to the Commissioner for consideration of this new evidence.

[6] Festination:  An involuntary tendency to take short accelerating steps in walking. *See* Dorland's Illustrated Medical Dictionary, 31st Edition, 2007, at 690.

### D. The ALJ did not err in failing to find King disabled pursuant to Medical-Vocational Guidelines 201.10 and 202.06

Finally, King argues that the ALJ's failed to find her disabled pursuant to Medical-Vocational Guidelines 201.10 or 202.06.[7]  King's argument is without merit.  Guideline 201.10 applies to sedentary work and the ALJ found that King was capable of light work.  Tr. 30; 20 C.F.R. Part 404, Subpart P, Appendix 2.  Guideline 202.06 applies to persons in the category of "advanced age."  Id.  At the time of the ALJ's decision King was not in that age category; she was in the age category "closely approaching advanced age."  Tr. 33.  Accordingly, the ALJ did not err in failing to find King disabled pursuant to Medical-Vocational Guidelines 201.10 or 201.06.

### VII. Conclusion

For the reasons set forth herein, the Court **AFFIRMS** the Commissioner's decision.

Dated:  May 12, 2014

Kathleen B. Burke
United States Magistrate Judge

---

[7] The Medical-Vocational Guidelines, known as the "Grid," are located at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grid"). The Grid is composed of Rules 200.01-204.00. Id. The Grid includes rules that may be applied in cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work. 20 C.F.R. § 404.1569. However, the rules contained in the Grid do not cover all possible variations of factors. Id.